SEALED

s/ T. Ferris

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>IDSEL VALENZUELA (1),<br>SUGEY CARO-SALAZAR (2),<br>Defendants. | Magistrate's Case No. **22-MJ-326**<br><u>COMPLAINT FOR VIOLATION OF:</u><br>21 U.S.C. § 841(a)(1) and 846 - Conspiracy to Distribute Controlled Substances (Felony)<br>**[UNDER SEAL]**<br>**ORDERED UNSEALED on 03/04/2022 s/ TrishaF** |

The undersigned complainant being duly sworn states:

Count 1

Beginning on a date unknown and continuing up to and including November 6, 2020, within Illinois, Indiana, the Southern District of California, and elsewhere, defendants IDSEL VALENZUELA and SUGEY CARO-SALAZAR did knowingly and intentionally conspire with each other, and other persons known and unknown, to distribute controlled substances, to wit: 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1 kilogram and more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

//

//

//

//

//

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

Manuel Heredia
Manuel Heredia
FBI Task Force Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 28th day of January 2022. I also order that this complaint, probable cause statement, and arrest warrant be filed under seal.

Allison H. Goddard
Honorable Allison H. Goddard
United States Magistrate Judge

## PROBABLE CAUSE STATEMENT

I, Manuel Heredia, being duly sworn, declare under penalty of perjury that the following statement is true and correct:

## TRAINING AND EXPERTISE

1. Your Affiant is a Task Force Officer employed by the San Diego Sheriff's Office assigned to the Federal Bureau of Investigation and has been since August 2018. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am presently assigned to the San Diego FBI's Major Mexican Traffickers Task Force (MMTTF), CE-4. This squad investigates money laundering and other derivative financial crimes committed by Drug Trafficking Organizations (DTO). I have been involved in numerous investigations involving individuals and criminal organizations involved in drug trafficking, money laundering, and crimes of violence all associated with drug trafficking organizations. I have served as the case agent and co-case agent for multiple investigations targeting sophisticated money laundering organizations operating in the United States and Mexico, including two investigations that led to the arrest and prosecution of 75 subjects.

3. Prior to my current assignment, I was assigned to the Criminal Intelligence Unit (CIU) for the Sheriff's Department. During my time with CIU, I was the International Liaison/Mexican Cartel investigator. Prior to that assignment, I was part of the High Intensity Drug Trafficking Area (HIDTA) team for the Sheriff's Department. There, I conducted mid to high level narcotic investigations involving DTOs. Prior to that assignment, I worked as a patrol deputy for the City of Imperial Beach in San Diego County. I have been with the Sheriff's department for over 16 years.

4. I have also received specialized training in transnational organized crime and money laundering techniques utilized by the DTOs. I have also participated in investigations in which drug traffickers and money launderers relied heavily upon telephone communication to include the use of messaging applications such as WhatsApp, e-mail services, and cellular phones to communicate with associates and co-conspirators. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods used by drug traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, to collect and launder the proceeds from the sale of controlled substances and the clandestine manufacturing of narcotics. My knowledge of the matters contained in this affidavit is based upon my personal knowledge, information provided to me by other law enforcement officers/agents, and information provided to me by one or more Confidential Sources (CS) and/or Sources of Information (SOI).

5. Prior to my appointment to the FBI, I served as an Enlisted Infantry Soldier in the United States Army, 82nd Airborne Division. As an Infantry Soldier I completed Ranger School and conducted two combat deployments to Iraq and Afghanistan as a squad sergeant. My formal education consists of a Bachelor of Science degree in Criminal Justice from the University of Phoenix.

## OVERVIEW OF INVESTIGATION

The Federal Bureau of Investigation Major Mexican Traffickers Task Force (MMTTF) initiated this investigation. The MMTTF is a task force composed of federal and local law enforcement agencies whose duties include targeting individuals involved with the smuggling of narcotics through the San Diego Ports of Entry and bulk cash smuggling and money laundering. Since this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, I have not

included each and every fact known to me concerning this investigation. I have set out only the facts that I believe are necessary to establish probable cause.

During the course of the investigation, agents and task force officers identified Idsel VALENZUELA and Sugey CARO-Salazar as narcotic money couriers and narcotic operating in the Northern district of Illinois and the Northern District of Indiana. One of their responsibilities was to pick up bulk narcotic proceeds in Chicago, Illinois, and elsewhere, and deliver the bulk cash to a money laundering organization (MLO) based out of the Southern District of California.

As discussed in more detail below, Idsel VALENSUELA met with an FBI confidential human source (CHS) in the Northern District of Illinois and delivered bulk cash to the CHS, and was she later stopped by law enforcement in the Northern District of Indiana in possession of more bulk cash. During a search of her residence large amounts of heroin and methamphetamine were seized. CARO-Salazar was responsible for storing the narcotics and distributing them to others. The meeting between VALENZUELA and the CHS was captured on surveillance video by hotel cameras.

<u>November 5, 2020: CHS Coordinates Money Pick-Up in Chicago</u>

The CHS was sent to Chicago, Illinois by the MLO who sent individuals throughout the United States to meet with drug trafficking organizations (DTO) to pick up bulk cash derived from drug proceeds and deposit it into the United States banking system. The MLO provided CHS with fictious business accounts where the money was to be deposited in increments of $50,000 or less to avoid suspicion. The money was supposed to eventually end up in Mexico in the hands of the owners of the narcotics. On November 5, 2020, the CHS conducted a recorded phone call to 415-283-9846. A female, Spanish speaker (hereinafter S1), answered the phone and agreed to deliver the bulk cash to the CHS in Chicago, Illinois the following day,

November 06, 2020, after she left work at 3 pm. During the call, CHS asked what amount she was going to deliver, but S1 declined to provide the amount.

Later that night, S1 contacted the CHS via recorded phone call and informed him/her that she was going to send a female associate to deliver the money to the CHS at his/her hotel for 11:00 am on the morning of November 6, 2020. S1 explained that this person would be traveling with her children, so that the delivery needed to happen quickly. The CHS directed her to park in a "carport" outside of the lobby of his/her hotel. Following the conversation, the CHS sent S1 a text message of the address to his hotel. S1 subsequently acknowledged the address.

November 6, 2020 CHS Meets with VALENZUELA in Chicago, ILL

On November 6, 2020, CHS was contacted by a female who was later identified as VALENZUELA at approximately 11:00 am. VALENZUELA stated that she had arrived and was waiting in a red car parked in the "carport" outside the lobby of the hotel. CHS described the vehicle as a red Ford Taurus sedan.

During the meeting, CHS received a paper bag filled with US currency after providing a code word, which was verified by VALENZUELA. Special Agents (SA) and Task Force Officers (TFO) from Drug Enforcement Administration (DEA) Chicago Field Division (CFD) Group 32 established surveillance on VALENZUELA and her co-passenger, Karyme VACA at the La Quinta Inn hotel located at 1 S. Franklin St, Chicago, IL 60606. DEA agents observed VALENZUELA's vehicle leave the area and followed it to 211 Sanborn St., Michigan City, Indiana where it parked in the driveway. A short time later, agents observed another vehicle, a Dodge Challenger, arrive and park in the driveway. Five minutes later both vehicles left the residence. Agents conducted an vehicle stop of VALENZUELA's vehicle and confirmed the driver was VALENZUELA, accompanied by her younger sister, Karyme VACA, and VALENZUELA's two minor children. VALENZUELA gave TFO Hickey verbal consent to search the entire vehicle as witnessed by SA Rowell, at

which time TFO Hickey located a black backpack in the trunk. TFO Hickey opened the backpack to reveal $97,390.00.

VALENZUELA initially stated that it was her mother's money to be used as a down payment on a house. VALENZUELA then immediately changed her answer and stated that the unknown Hispanic male (UHM) in the Dodge Challenger had just given it to her and stated it was "98." VALENZUELA stated that she did not know exactly what that meant, but assumed it was some kind of code. TFO Hickey then had VALENZUELA move her vehicle from the roadway to the PNC Bank parking lot nearby for further investigation.

SA Kaiser arrived to the PNC Bank lot and assisted TFO Hickey in questioning VALENZUELA. VALENZUELA stated that she had picked up and delivered money on several occasions for her mother because her mother works during the day and is not always able to do it herself. VALENZUELA stated that her mother had sent her on this day to meet with the UHM in the Dodge Challenger and pick up money from him. VALENZUELA stated that her mother has been laundering money since approximately July 2020. VALENZUELA stated that she knew it was "dirty money" and most likely cartel related because her mother had asked her to travel to Mexico to pick up "untraceable" phones from someone in Tijuana, Mexico. SA Kaiser asked VALENZUELA whether there was any more money or drugs in her house, and she responded, "Yeah, probably" and further stated that it would either be in the basement or the front room of the house. VALENZUELA then gave SA Kaiser verbal consent to search her residence at 1105 Woodward St, LaPorte, IN, as witnessed by TFO Hickey.

TFO Milo Derman processed Karyme VACA on scene, at which time she was released with the minor children. TFO Hickey and SA Kaiser then escorted VALENZUELA to her residence. At the residence, VALENZUELA provided SA Kaiser with the key to the back door of the house. Officers then conducted a protective

sweep of the house. During the sweep, GS Fisher located approximately 167 kilograms of methamphetamine and 10 kilograms of heroin in the basement of the house, as witnessed by TFO Hickey and SA Kaiser.

While officers were searching the residence, VALENZUELA's mother, Sugey CARO-Salazar arrived at the house. CARO-Salazar agreed to speak to SA Alarcon. CARO-Salazar stated that she had been receiving and delivering money for several months. CARO-Salazar stated that she met a man in Chicago that offered her money to work moving money for him. CARO-Salazar stated that the same man gave her an address in Chicago, and she was told to go there. Upon arrival, she was given the narcotics and told to keep them at her house until someone came to retrieve them. CARO-Salazar stated that she did not know the identity of the man she is working for.

SA Kaiser acquired the methamphetamine, heroin and the United States currency and transported them to the DEA CFD Office for processing, as witnessed by TFO Hickey. VALENZUELA and CARO-SALAZAR were processed at the residence and released pending further investigation.

On November 6, 2021, Special Agent Crim (SA) Crim received lab results for 9 packages weighing 10.82 kilograms containing heroin that was seized from the residence of Idsel VALENZUELA and Sugey CARO-Salazar in Laporte, Indiana on November 6, 2020. The lab results found that heroin was confirmed to be contained in all 9 of the packages.

On January 27, 2022, a field test was conducted on one of the packages of the suspected methamphetamine. The field test confirmed the package presence of methamphetamine. The total weight of the methamphetamine was 105.70 kilograms.

Therefore, based on my training and experience, along with the above recorded seizure/money drop to the CHS, I believe that CARO-Salazar and VALENZUELA are

engaged in a conspiracy to distribute methamphetamine, heroin and bulk cash on behalf of a Mexico based TCO.

Request for Sealing

It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this complaint, including the probable cause statement and arrest warrant. Sealing is necessary because premature disclosure of the contents of this probable cause statement and related documents may cause the defendant to flee and may cause destruction of evidence and may have a negative impact on this continuing investigation.